**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

| | | |
|---|---|---|
| CITIZENS BANKING CORPORATION,<br>a Corporation, | ) <br> ) <br> ) | Case No.: 2:07-cv-11514 |
| Plaintiff / Counterclaim Defendant, | ) <br> ) | Judge: Arthur J. Tarnow |
| v. | ) <br> ) | Magistrate Donald A. Scheer |
| CITIZENS FINANCIAL GROUP, INC.,<br>a Corporation, | ) <br> ) <br> ) | |
| Defendant / Counterclaim Plaintiff, | ) <br> ) | |
| And | ) <br> ) | |
| CHARTER ONE BANK,<br>NATIONAL ASSOCIATION<br>a National Association, | ) <br> ) <br> ) <br> ) | |
| Defendant / Counterclaim Plaintiff, | ) <br> ) | |
| And | ) <br> ) | |
| THE ROYAL BANK OF<br>SCOTLAND GROUP, plc,<br>a Corporation, | ) <br> ) <br> ) <br> ) | |
| Counterclaim Plaintiff. | ) | |

**DEFENDANTS' MEMORANDUM OF LAW**
**IN OPPOSITION TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

STATEMENT OF ISSUE PRESENTED ............................................................ 1

BACKGROUND ............................................................................................... 3

ARGUMENT ..................................................................................................... 5

    I.      PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS ...................... 5

          A.     CITIZENS BANK For Financial Services Is a Very Weak Trademark .................................................................................. 6

          B.     CITIZENS BANK and RBS CITIZENS Are Distinguishable Trademarks ......................................................................... 10

          C.     Consumers Use a High Degree of Care in Choosing What Bank to Use ................................................................................... 14

          D.     Defendant Did Not Adopt Its RBS CITIZENS Trademark With Bad Intent .............................................................................. 15

          E.     The Remaining Factors Do Not Show a Likelihood of Confusion .......... 16

    II.     THE REMAINING FACTORS SHOW THAT THE COURT SHOULD NOT ORDER A PRELIMINARY INJUNCTION ............................................. 18

CONCLUSION ............................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

*AutoZone, Inc. v. Tandy Corp.*,
   373 F.3d 786 (6th Cir. 2004) ..................................................................6, 10, 12, 14, 16

*Big Time Worldwide Concert & Sport Club at Town Ctr., LLC v. Marriott Int'l, Inc.*,
   236 F. Supp. 2d 791 (E.D. Mich. 2003)..................................................7, 12, 13, 14, 19

*Champions Golf Club, Inc. v. Champions Gulf Club, Inc.*,
   78 F.3d 1111 (6th Cir. 1996) ......................................................................................6, 10

*Citizens Banking Corp. v. CNB Bancshares, Inc.*, No. 98-CV-74195-DT (E.D. Mich. Dec.
   23, 1998) .............................................................................................................................6

*Citizens Fin. Group, Inc., v. Citizens Nat'l Bank*,
   30 F. App'x 24, 26 (3d Cir. 2002) .....................................................................................9

*Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*,
   383 F.3d 110 (3d Cir. 2004), *cert. denied*, 544 U.S. 1018 (2005) .....................................9

*Citizens Nat'l Bank v. Citizens Bank*,
   157 F. Supp. 2d 713 (S.D. Miss. 2001), *aff'd*, 35 F. App'x 391 (5th Cir. 2002)...........9, 19

*Comerica Inc. v. Fifth Third Bancorp*,
   282 F. Supp. 2d 557 (E.D. Mich. 2003)...................................................11, 14, 15, 17, 18

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*,
   109 F.3d 275 (6th Cir. 1997) ....................................................................................10, 17

*Data Concepts, Inc. v. Digital Consulting, Inc.*,
   150 F.3d 620 (6th Cir. 1998) ......................................................................................7, 16

*Empire Nat'l Bank v. Empire of Am. FSA*,
   559 F. Supp. 650 (W.D. Mich. 1983) ..............................................................................14

*First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*,
   101 F.3d 645 (10th Cir. 1996) .........................................................................................12

*Frisch's Rest., Inc. v. Shoney's Inc.*,
   759 F.2d 1261 (6th Cir. 1985) .........................................................................................19

*Hindu Incense v. Meadows*,
   692 F.2d 1048 (6th Cir. 1982) ...........................................................................................6

*Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*,
   931 F.2d 1100 (6th Cir. 1991) .................................................................1, 7, 10, 14, 15, 16

*Jet, Inc. v. Sewage Aeration Sys.*,
   165 F.3d 419 (6th Cir. 1999) ...............................................................................10, 12, 17

*K'Arsan Corp. v. Christian Dior Perfumes, Inc.*,
   166 F.3d 1214, 1998 WL 777987 (6th Cir. 1998) .............................................................8

*Leary v. Daeschner*,
   228 F.3d 729 (6th Cir. 2000) .............................................................................................5

*Linn Camera Shop Inc. v. Meijer, Inc.*,
   559 F. Supp. 175 (W.D. Mich. 1982) ................................................................................6

*Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*,
   834 F.2d 568 (6th Cir. 1987) .........................................................................5, 10, 16, 17

*Nabisco, Inc. v. Warner-Lambert Co.*,
   220 F.3d 43 (2d Cir. 2000).............................................................................................13

*Precision Inst. Mfg. Co. v. Auto. Maintenance Mach. Co.*,
   324 U.S. 806 (1945).........................................................................................................20

*Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*,
   134 F.3d 749 (6th Cir. 1998) ............................................................................................5

*Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*,
   651 F.2d 311 (5th Cir. 1981) ...........................................................................................9

*Taj Mahal Enters., Ltd. v. Trump*,
   742 F. Supp. 892 (D.N.J. 1990) .....................................................................................14

*Therma-Scan, Inc. v. Thermoscan, Inc.*,
   295 F.3d 623 (6th Cir. 2002) ..............................................................5, 6, 12, 14, 16

*Trenton Corp. v. Superior Corrosion Control*,
   No. 06-15699, 2007 WL 268792 (E.D. Mich. Jan. 25, 2007) ....................................19, 20

*Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*,
   22 F.3d 1527 (10th Cir. 1994) ......................................................................................14

*W.W.W. Pharm. Co. v. Gillette Co.*,
   984 F.2d 567 (2d Cir. 1993).............................................................................................14

*Worthington Foods, Inc. v. Kellogg Co.*,
    732 F. Supp. 1417 (S.D. Ohio 1990) ................................................................................14

## STATUTES

M.C.L. § 429.34(3)(2007)..............................................................................................................6

## STATEMENT OF ISSUE PRESENTED

Whether the Plaintiff, Citizens Banking Corporation, has shown a strong likelihood of success on its claim that the Defendants' use of their trademark RBS CITIZENS for retail banking branches will cause a likelihood of confusion among Michigan consumers, due to Plaintiff's use of CITIZENS BANK.  Examples of the parties' marks are depicted below:

<table>
<tr><td>Defendants' mark</td><td>Plaintiff's mark:</td></tr>
</table>




Defendants Citizens Financial Group, Inc. and Charter One Bank, N.A., respectfully submit that Plaintiff has not shown a strong likelihood of success on its trademark infringement claim.  For these and other reasons, the Court should deny Plaintiff's motion for a preliminary injunction.

## INTRODUCTION

Plaintiff, Citizens Bank Corporation ("CBC"), seeks to preliminarily enjoin the Defendants, Citizens Financial Group, Inc. and Charter One Bank, N.A. (collectively, "CFG"), from using anywhere in the State of Michigan "any and all marks formed by or incorporating the word CITIZENS."  CBC Motion ¶ 1.

In its zeal to exclude CFG from using the common word "citizens," CBC does not disclose material facts and misrepresents others.  On the first page of its brief, plaintiff tells the Court that the parties' marks are "pictured below" and later argues that the marks at issue are "virtually identical" and will "inevitably" lead to consumer confusion.  CBC Br. 1, 13-14.  But nowhere in its voluminous submission on this motion does CBC ever actually show the Court the parties' marks in their commercial context.[1]  Examples of the trademark that CFG plans to use in Michigan and throughout the Midwest, beginning in the summer of 2007, and the mark that CBC uses are, in fact, pictured below:

Defendants' mark            Plaintiff's mark:

McLaughlin Decl. ¶ 12; Smith Decl. ¶ 64.  As the Court can see for itself, these marks are not "virtually identical" and a reasonable consumer will readily distinguish between them.

CBC's brief also *nowhere mentions* the extensive third-party use of the term "citizens" in connection with banking services.  More than three hundred different banks throughout the country, including the plaintiff and defendants here, currently use the term "citizens" in their

---

[1]  *See Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1106 (6th Cir. 1991) (taking plaintiff to task for not identifying "which marks are to be compared"; "[i]n assessing the likelihood of confusion, a court's concern is 'the performance of the marks in the commercial context'") (citation omitted).

names.  Smith Decl. ¶ 6.  In Michigan alone, there are five other banking institutions that identify themselves with the name "citizens."  *Id.* ¶ 3 & Ex. 1.  Indeed, CBC itself has expanded into areas where other Michigan banks already operate under the name "citizens," in some cases for *decades*.  As a result, CITIZENS BANK is an extremely weak trademark that is entitled to only a very narrow scope of protection.  This zone of protection should not, under well-established law, be extended to enjoin defendant's use of the distinguishable trademark RBS CITIZENS.

Plaintiff, however, would have this Court simply ignore the differences between the parties' marks.  According to plaintiff, "RBS" is "three non-descript initials."  CBC Br. 14.  That is false and plaintiff knows it.  RBS is one of the strongest and most distinctive brands in the entire banking industry.  It is the trademark of The Royal Bank of Scotland Group, plc, CFG's parent company, which is one of the largest banks in the world and among the ten largest banks operating in the U.S., and has been providing financial services in this country for more than twenty-five years.  Watt Decl. ¶¶ 4-5.  Again, under well-settled law that CBC ignores, the inclusion of such a distinctive trademark in CFG's composite mark RBS CITIZENS forecloses any likelihood of consumer confusion here.

The misrepresentations in CBC's brief begin with its very first sentence, where CBC states that "Defendant sought Plaintiff's permission to use the mark RBS CITIZENS in Michigan," a misstatement that CBC then repeatedly invokes to support arguments throughout its brief.  CBC Br. iv, 10, 17.  CFG did no such thing.  Its CEO met over dinner with plaintiff's CEO a month ago and informed plaintiff that CFG *will* re-brand its branches in Michigan and throughout the Midwest as RBS CITIZENS.  Steinour Decl. ¶¶ 9-11; Pierce Decl. ¶¶ 4-7.  At this meeting, defendants' CEO also proposed that, in lieu of litigating this action, the parties should agree to co-exist in Michigan and Ohio, where CFG owns the exclusive right to use its

2

incontestable federal registration for CITIZENS BANK and where plaintiff is unlawfully seeking to re-brand its branches using its nearly identical mark.  Steinour Decl. ¶ 10; Pierce Decl. ¶ 6.

In sum, when the facts and law are laid bare, CBC has no chance of success, let alone the requisite strong likelihood of success, on its claim for trademark infringement.  CBC's motion to enjoin CFG from re-branding its Michigan branches as RBS CITIZENS should be denied.

## BACKGROUND

Citizens Financial Group has been operating under the name CITIZENS since 1871.  It is now a $164 billion bank holding company and operates approximately 1,100 retail banking branches under the mark CITIZENS BANK throughout the Northeast and Mid-Atlantic regions of the U.S.  CFG is the owner of a family of trademarks that include the term "citizens," 29 of which are registered with the U.S. Patent and Trademark Office, including an incontestable federal registration for CITIZENS BANK.  McLaughlin Decl. ¶¶ 3-4; Smith Decl. ¶¶ 46-47.

In Michigan, Illinois, Indiana, and Ohio, CFG operates more than 400 retail banking branches under the mark CHARTER ONE.  When CFG acquired Charter One Financial, Inc. in 2004, it re-branded its CHARTER ONE branches in New York and Vermont as CITIZENS BANK but did not, at that time, re-brand the CHARTER ONE branches in the Midwest.  In 2006, however, CFG began planning for a comprehensive re-branding of all its remaining CHARTER ONE branches throughout the Midwest—not only in Michigan.  CFG decided on the mark RBS CITIZENS, as a combination of distinctive elements from its well-known and federally registered trademarks RBS, CITIZENS BANK, and CHARTER ONE:



  

3

The re-branding of CFG's CHARTER ONE branches to RBS CITIZENS is scheduled to take place in the summer of 2007.  McLaughlin Decl. ¶¶ 8-14.

On December 29, 2006, plaintiff Citizens Banking Corporation merged with Republic Bancorp Inc.  Gallagher Decl. ¶ 12.  Before the merger, CBC and its predecessors were primarily located in Michigan and operated as CITIZENS BANK (although plaintiff does not own a federal registration for CITIZENS BANK).  *Id.* ¶¶ 5-7.  After the merger, CBC announced that, at the end of April 2007, certain branches that are now operating in Ohio as REPUBLIC BANK will be re-branded as CITIZENS BANK.  Smith Decl., Exs. 82-83.  There are, however, currently seventeen other banks in Ohio that use the term "citizens" to identify themselves.  Smith Decl. ¶ 4.  CFG also has an exclusive federal right, due to its incontestable federal registration for CITIZENS BANK, to use that mark outside the State of Michigan.  Nevertheless, at the same time that CBC is planning to re-brand its banks in Ohio as CITIZENS BANK, CBC is taking the contradictory position in this action that CFG may *not* use RBS CITIZENS in Michigan.  Indeed, according to motions for a preliminary injunction that CBC has made in both this case and a related case in this District against Citizens First Bancorp, Inc., no party other than CBC should be allowed to use "any and all marks formed by or incorporating the word CITIZENS" in Michigan.  CBC Motion ¶ 1; Smith Decl., Ex. 81 at 2.

## ARGUMENT

Plaintiff has not satisfied the high standard for obtaining the "extraordinary remedy" of a preliminary injunction.  *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000).  Not only has CBC failed to make the requisite showing of a "strong likelihood of success on the merits," *see Rock & Roll Hall of Fame & Museum, Inc. v. Gentile Prods.*, 134 F.3d 749, 753 (6th Cir. 1998), but, due to (i) the weak scope of protection afforded to CBC's marks, (ii) the differences between the parties' marks, and (iii) the high degree of care that consumers use in choosing banking

services, the likely outcome of this case is that plaintiff's claims will fail.  For this reason alone, the Court should deny CBC's motion.  The motion also should be denied because CBC has failed to show that it will suffer irreparable injury—in light of its peaceful co-existence for *decades* with other banks in Michigan using "citizens" for banking services—while defendants would suffer injury if prevented from doing business in Michigan under their name.

## I.     PLAINTIFF IS NOT LIKELY TO SUCCEED ON THE MERITS

"The touchstone of trademark law is the 'likelihood of confusion.'"  *Little Caesar Enters., Inc. v. Pizza Caesar, Inc.*, 834 F.2d 568, 570 (6th Cir. 1987).  Eight factors are "relevant in determining whether a likelihood of confusion exists":  (1) the strength of the plaintiff's mark; (2) the relatedness of the parties' goods or services; (3) the similarity of the marks; (4) any actual confusion; (5) the marketing channels used by the parties; (6) the probable degree of purchaser care and sophistication; (7) the defendant's intent in selecting its mark; and (8) the likelihood of either party expanding its product lines using the marks.  *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 630 (6th Cir. 2002).  "'[N]ot all of these factors may be particularly helpful in any given case. . . .  *The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way*.'"  *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 793 (6th Cir. 2004) (emphasis and ellipsis in original).

### A.     CITIZENS BANK For Financial Services Is a Very Weak Trademark

The "strength of the mark" factor in the likelihood of confusion analysis is a pivotal inquiry.  A "strong mark enjoys greater protection while the weak mark is afforded little support."  *Hindu Incense v. Meadows*, 692 F.2d 1048, 1050 (6th Cir. 1982); *see also Champions Golf Club, Inc. v. Champions Gulf Club, Inc.*, 78 F.3d 1111, 1117 (6th Cir. 1996).

CBC focuses more than half of its brief on the protectability of its CITIZENS BANK mark and argues, among other things, that its mark is "arbitrary" and thus "inherently

5

distinctive."[2]  CBC Br. 11, 15.  This is remarkable, because this Court has *already ruled* in a previous action brought by CBC that its "mark is not arbitrary, but descriptive."  *Citizens Banking Corp. v. CNB Bancshares, Inc.*, No. 98-CV-74195-DT, slip op. at 5 (E.D. Mich. Dec. 23, 1998) ("The Court assumes that the majority, at least, of CITIZENS BANK customers, or customers of any bank for that matter, are citizens.") (attached as Ex. 84 to Smith Decl.).  Also, protectability is not the same thing as strength, *see Therma-Scan,* 295 F.3d at 632, and plaintiff's mark is decidedly *not* strong.

The term "citizens" has long been used to identify financial services throughout the United States and in Michigan in particular, and it is well-established that "extensive third-party uses of a trademark [] substantially weaken the strength of a mark."  *Homeowners*, 931 F.2d at 1108.  The "greater the number of identical or more or less similar trademarks already in use on different kinds of goods, the less is the likelihood of confusion."  *Id.*; *see also Data Concepts, Inc. v. Digital Consulting, Inc.*, 150 F.3d 620, 625 (6th Cir. 1998) ("[A] mark is weakened outside the context in which it is used if there is third-party use of the mark.").  The reason for this rule is that where, as in this case, a mark is one in a "crowd" of similar marks, "customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other."  *Big Time Worldwide Concert & Sport Club at Town Ctr., LLC v. Marriott Int'l, Inc.*, 236 F. Supp. 2d 791, 800 (E.D. Mich. 2003) (no likelihood of confusion

---

[2]  CBC also contends that its registration with the Michigan Department of Labor for CITIZENS BANK gives it the "*exclusive* right" to use that mark.  CBC Br. 10-11.  That is not true.  CBC's Michigan registration does *not* preclude CFG from "proving any legal or equitable defense or defect which might have been asserted if such mark had not been registered."  M.C.L. § 429.34(3).  CBC also obtained its Michigan registration without the issuance of any administrative findings.  The registration therefore does not show that CBC has the exclusive right to use CITIZENS BANK in this State or any other.  *See, e.g., Linn Camera Shop Inc. v. Meijer, Inc.*, 559 F. Supp. 175, 181 (W.D. Mich. 1982) (declining to give any deference to Michigan registration for purposes of determining strength of a mark; "the Certificate of Registration . . . merely certifies that defendant . . . registered [the mark]").

between BIG TIME WORLDWIDE and BIG TIME TICKETS, both for ticket sales, because the words "'big time' are used extensively by many others in the marketplace").

CBC's brief does not utter a word about this issue, but there is an extraordinarily crowded field of banks using the term "citizens." The Federal Deposit Insurance Corporation lists *more than 300* banking institutions, with more than 3,000 separate offices, in the country that use "citizens" to identify themselves. Smith Decl. ¶ 6 & Ex. 4. More than twenty such institutions, including CFG and CBC, use CITIZENS BANK standing alone for banking services. *Id.* Ex. 4. And scores of other institutions use names such as "Citizens," "Citizens Bank of" a particular place, "Citizens Savings Bank," "Citizens Community Bank," and "Citizens Bank & Trust." *Id.* There are also five other FDIC-registered institutions *in Michigan* currently using the term "Citizens" as a source-identifier:

- CITIZENS FIRST, based in Port Huron, operates 25 branches with deposits of approximately $1.2 billion. This bank also holds federal trademark registrations for, among other marks, CITIZENS FIRST BANK. Smith Decl. ¶ 23.

- CITIZENS STATE BANK, based in New Baltimore, operates 7 branches in Michigan with approximately $182 million in deposits. *Id.*

- CITIZENS NATIONAL BANK OF CHEBOYGAN, operates 8 branches in Michigan and has approximately $221 million in deposits. *Id.*

- THE CITIZENS STATE BANK OF ONTONAGON, operates 3 branches in Michigan with $39 million in deposits. *Id.* ¶ 24.

- In July 2005, Wisconsin-based Citizens Community Federal acquired Community Plus Savings Bank of Rochester Hills and re-branded that institution's five Michigan branches as CITIZENS COMMUNITY FEDERAL. *Id.* ¶ 23.

These banks have peacefully co-existed with CBC for *up to eighty-five years*. Smith Decl. ¶¶ 23-24. Indeed, plaintiff first began opearating in Macomb County more than seventy years *after* Citizens State Bank had already been using its "citizens" name there. Smith Decl. ¶ 44. And, just this week, CBC converted a bank only a mile from where a Citizens State Bank already

operates.  Smith Decl. ¶ 45.  Plaintiff similarly began using its mark in Wisconsin, and plans to

re-brand as CITIZENS BANK in Ohio, notwithstanding that nine banks in Wisconsin and

seventeen in Ohio had been using "citizens" before plaintiff arrived.  *Id.* ¶¶ 25-27.  Thus, despite

what it says on this motion, CBC has shown by its own conduct that, at least when it is the

second- (or eighteenth-) comer, it does not regard "citizens" to be a strong designator of source.

In the face of this extensive third-party use and plaintiff's own conduct, CBC's

CITIZENS BANK mark must be deemed exceptionally weak and therefore entitled to only a

very limited scope of protection, if any.  *See, e.g., K'Arsan Corp. v. Christian Dior Perfumes,*

*Inc.*, 166 F.3d 1214 (table), 1998 WL 777987, at *5 (6th Cir. 1998) (per curiam) ("Third party

use of 'sun powder' (by at least two, and as many as five, other companies . . .) weakens the

mark.").  Indeed, courts have expressly held that "'Citizens' or 'Citizens Bank' . . . is not a

strong mark."  *Citizens Nat'l Bank v. Citizens Bank*, 157 F. Supp. 2d 713, 719 (S.D. Miss. 2001),

*aff'd*, 35 F. App'x 391 (5th Cir. 2002).  CBC's brief does not even cite these cases, however.

*See also Citizens Fin. Group, Inc., v. Citizens Nat'l Bank*, 30 F. App'x 24, 26 (3d Cir. 2002)

(affirming finding that "the strength of the word 'CITIZENS' as a mark is very weak").

Indeed, CBC has *expressly acknowledged* in a recent filing with the U.S. Patent and

Trademark Office that, due to a crowded field, any mark using "citizens" for financial services is

"weak" and "entitled to only a narrow scope of protection."  Smith Decl., Ex. 86.  Those

admissions are directly contrary to CBC's statement in its brief that "the CITIZENS Mark is

strong."  CBC Br. 16.  In 2005, CBC filed an application for federal registration of "Citizens

Bank Wealth Management, N.A."  The P.T.O. rejected plaintiff's application on the ground that

prior registrations of marks using the exact words "citizens bank" may cause confusion with

CBC's applied-for mark.  Smith Decl., Ex. 85 ("[T]he cited marks feature not just the word

'CITIZENS,' but the phrase 'CITIZENS BANK'."). In response, CBC, through the *same counsel* who represents it in this case, submitted to the P.T.O. a lengthy list of "coexisting registrations for marks incorporating 'CITIZENS' for financial services" and argued that, due to this extensive third-party use, such marks are entitled to only a "narrow scope of protection" and are not likely to cause confusion with CBC's mark (Smith Decl., Ex. 86):

> The coexistence of these may registrations for marks incorporating
> "CITIZENS" demonstrates that [such] marks are "hemmed in on
> all sides by similar marks for similar services" and are therefore
> entitled to only a narrow scope of protection.

In accordance with CBC's own prior admissions, then, its CITIZENS BANK mark is "hemmed in on all sides" by a crowded field of trademarks in Michigan and throughout the rest of the country using the term "citizens" for banking services. *See also Homeowners*, 931 F.2d at 1109 (using plaintiff's admissions to the PTO to support a ruling of no likelihood of confusion). CBC's mark is thus extremely weak and entitled to only a narrow scope of protection that does not justify an injunction against CFG's use of the distinguishable mark RBS CITIZENS.

**B.     CITIZENS BANK and RBS CITIZENS Are Distinguishable Trademarks**

The "similarity of the marks" factor is also "entitled to considerable weight." *Champions*, 78 F.3d at 1118-19; *see also Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 283 (6th Cir. 1997). In a case like this one, analysis of this factor alone can show that there is no likelihood of confusion.[3] Due to the significant differences between CBC's mark and CFG's mark RBS CITIZENS there cannot, as a matter of law, be any likelihood of confusion.

---

[3]  *See AutoZone*, 373 F.3d at 797 ("[T]he marks [POWERZONE and AUTOZONE] are not similar enough to create a likelihood of confusion."); *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 423 (6th Cir. 1999) ("Jet's infringement claims ultimately fail because JET and AEROB-A-JET simply are not similar enough to cause confusion in the marketplace."); *Little Caesar*, 834 F.2d at 572 ("[W]e think the marks are sufficiently distinct to make confusion unlikely.").

Third-party use of marks with the term "citizens" is so widespread that even a minor change from CBC's mark CITIZENS BANK obviates any likelihood of confusion.  *See Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 316 (5th Cir. 1981) ("Where a trademark is itself weak, minor additions may effectively negate any confusing similarity.").[4]  As this Court has previously held, this principle applies with special force "[i]n the banking world" where "consumers are used to seeing banks with similar names offer products with similar names."  *Comerica, Inc. v. Fifth Third Bancorp*, 282 F. Supp. 2d 557, 570 (E.D. Mich. 2003).

The differences between the parties' marks are also not minor.  CBC encourages the Court to *ignore* the term "RBS" and the overall commercial presentation of the parties' marks and instead focus on what CBC declares to be the "dominant" portion of the marks:  the word "citizens."  CBC Br. 14.  But CBC does not tell the Court that its position on this issue shifts depending upon whom CBC is suing for infringement.  In the pending *Citizens First* case, for example, CBC urges the Court to focus on the "first part of a mark," apparently because that approach would favor CBC due to the common first word in "Citizens First" and "Citizens Bank."  Smith Decl., Ex. 81 at 13 n.6.  CBC abandons that approach here, for the transparent reason that RBS CITIZENS and CITIZENS BANK do *not* share a common "first part."[5]  Even aside from CBC's failure to play it straight with the Court, however, its method of self-selecting a particular component of the marks at issue for purposes of comparison is an erroneous one.

---

[4]  *See also id.* ("[W]e find the extensive third-party use of the word 'Sun' impressive evidence that there would be no likelihood of confusion between Sun Banks and Sun Federal."); *Citizens Nat'l Bank*, 157 F. Supp. 2d at 722 (applying this principle in ruling there is no likelihood of confusion between CITIZENS BANK OF PHILADELPHIA and CITIZENS NATIONAL BANK OF MERIDEN); *Citizens Fin. Group, Inc. v. Citizens Nat'l Bank*, 383 F.3d 110, 114 (3d Cir. 2004) (jury found no likelihood of confusion between CITIZENS BANK and CITIZENS NATIONAL BANK, but that CITIZENS BANK was likely to cause confusion with CITIZENS).

[5]  CBC contends that consumers have a "propensity to abbreviate trademarks."  CBC Br. 14.  Even if that were true, however, the "abbreviated" marks would be the powerful RBS brand, without the non-distinctive term "citizens," and CBC's weak CITIZENS name, which would not cause any reasonable consumer to be confused.

As the Sixth Circuit has repeatedly ruled, "We have endorsed the 'anti-dissection rule,' which serves to remind courts not to focus only on the prominent features of the mark, or only on those features that are prominent for purposes of the litigation, but on the mark in its totality." *Jet, Inc. v. Sewage Aeration Sys.*, 165 F.3d 419, 423 (6th Cir. 1999).[6] Viewed properly in their totality and in commercial context, the marks at issue here cannot be deemed confusingly similar. As shown below, CBC's mark uses a red, ball-shaped logo with white stripes, and the words CITIZENS BANK, in all capital letters, are presented in gray:



CFG's re-branded CHARTER ONE banks, on the other hand, will use a distinctive, federally registered daisy wheel logo that CFG and its parent corporation have used in connection with their marks RBS, CITIZENS, and CHARTER ONE; the highly distinctive and federally registered trademark RBS; the term "Citizens" *without* the word "bank"; and the designation is presented in either blue or in white lettering against a dominant blue backdrop:

     

McLaughlin Decl. ¶¶ 12, 14 & Ex.1 (more examples); Watt Decl. ¶ 7 & Exs. 1-3. Especially in light of the widespread third-party use of the term "citizens" for banking services, the parties' marks here are simply not sufficiently similar to give rise to a likelihood of confusion.[7]

---

[6] *See also AutoZone*, 373 F.3d at 795 (under the "'anti-dissection rule,'" "we 'view marks in their entirety and focus on their overall impressions, not individual features'"); *Therma-Scan,* 295 F.3d at 633 ("'[C]ourts must view marks in their entirety and focus on their overall impressions, not individual features.'").

[7] *See, e.g.*, *First Sav. Bank, F.S.B. v. First Bank Sys., Inc.*, 101 F.3d 645, 655 (10th Cir. 1996) (no likelihood of confusion between FIRST BANK and FIRST BANK SYSTEM; "[w]hen the primary term is weakly protected to begin with, minor alterations may effectively negate any confusing similarity between the two marks");

CBC's attempt to diminish the significance of "RBS"—a powerful brand standing alone—as merely "three non-descript initials" fails.  CBC Br. 14.  As CBC elsewhere acknowledges, CFG's parent corporation, The Royal Bank of Scotland, plc, is "a mammoth banking group."  *Id.* at 7.  "RBS" is one of the most well-known and distinctive brands in the entire banking industry and throughout the world.  Watt Decl. ¶¶ 4, 7-11; McLaughlin Decl. ¶¶ 5, 11.  The Royal Bank of Scotland uses "RBS" as a free-standing trademark in the U.S. and also in the same manner that CFG will use it in RBS CITIZENS, *e.g.*, RBS GREENWICH CAPITAL, RBS ASSET FINANCE, RBS LYNK.  Watt Decl., Ex. 1.  During the last four years, The Royal Bank of Scotland has also expended approximately $90 million to market financial services offered under its RBS brand name in the U.S.  *Id.* ¶ 9.  In Michigan alone, RBS has circulated television and print ads that have made more than 140 million impressions since 2004.  *Id.* ¶ 10.

The use of such a distinctive brand as RBS in conjunction with another term to designate the source of a product or service "significantly reduces, if not altogether eliminates" any likelihood of confusion:

> DENTYNE ICE and ICE BREAKERS are at best marginally similar because of the common use of "Ice" . . . .  [C]ritically, Warner-Lambert prominently—indeed primarily—identifies DENTYNE ICE as a member of the DENTYNE family of gums . . . .  Warner-Lambert's prominent use of its well-known house brand therefore significantly reduces, if not altogether eliminates, the likelihood that consumers will be confused as to the source of the parties' products.

*Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2d Cir. 2000).  The Sixth Circuit, and many other courts including this one, have repeatedly applied this principle in ruling that a

---

(continued…)

*see also Jet, Inc.*, 165 F.3d at 423 ("JET and AEROB-A-JET are visually and verbally distinct."); *Big Time*, 236 F. Supp. 2d at 802 (BIG TIME WORLDWIDE and BIG TIME TICKETS are "noticeably dissimilar").

defendant's use of a distinctive trademark as a component of a composite mark eliminates or at least markedly reduces any likelihood of confusion.[8]  "RBS" thus sharply distinguishes RBS CITIZENS from CITIZENS BANK.  For this and other reasons stated above, the "similarity of the marks" factor weighs heavily against a likelihood of confusion.

### C.      Consumers Use a High Degree of Care in Choosing What Bank to Use

The more careful and attentive a consumer is when purchasing services, the less likely that consumer is to be confused as to the source of the services he or she is purchasing.  *See Homeowners*, 931 F.2d at 1111.  "When services are sold to such [careful] buyers, other things being equal, there is less likelihood of confusion."  *Id.*; *see also Therma-Scan*, 295 F.3d at 638.

This factor also weighs strongly in favor of a finding of no likelihood of confusion.  As this Court has previously held, "'[c]onsumers tend[] to exercise a relatively high degree of care in selecting banking services.  As a result, customers are more likely to notice what, in other contexts, may be relatively minor differences in names.'"  *Comerica Inc.*, 282 F. Supp. 2d at 571 (quoting *First Nat'l Bank*, 153 F.3d at 889); *see also Empire Nat'l Bank v. Empire of Am., FSA*, 559 F. Supp. 650, 656 (W.D. Mich. 1983) ("Courts have generally recognized that bank customers exercise a greater degree of care than do customers of other businesses.").

---

[8]  *See, e.g.*, *AutoZone*, 373 F.3d at 797 ("[T]he use of the Radio Shack house mark in proximity to POWERZONE reduces the likelihood of confusion [with AUTOZONE] from any similarity that does exist."); *Therma-Scan*, 295 F.3d at 634 ("prominent display of the BRAUN name" on thermometers "diminishes the likelihood of confusion created by the comparable marks"); *Big Time Worldwide*, 236 F. Supp. 2d at 803 ("[A]dding MARRIOT to Defendant's mark further supports the conclusion that Plaintiff's mark and Defendant's mark are dissimilar."); *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1531 (10th Cir. 1994) (AT & T UNIVERSAL CARD not confusingly similar to UNIVERSAL MONEY marks due, in part, to AT & T's prominent use of its distinctive house mark); *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 573 (2d Cir. 1993) (RIGHT GUARD SPORT STICK not confusingly similar to SPORTSTICK as a matter of law; "when a similar mark is used in conjunction with a company name, the likelihood of confusion may be lessened"); *Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1441-42 (S.D. Ohio 1990) (no likelihood of confusion between HEARTWISE and KELLOGG'S HEARTWISE due in part to Kellogg's "prominent[] display[]" of its house mark); *Taj Mahal Enters., Ltd. v. Trump*, 742 F. Supp. 892, 896 (D.N.J. 1990) (no likelihood of confusion between TRUMP TAJ MAHAL and TAJ MAHAL; "defendants' inclusion of the name Trump does mitigate the confusion which may arise between the parties' marks because of the distinctive characteristics of the name").

CBC's counsel is undoubtedly aware of this Court's decision in *Comerica*, but, once again, CBC ignores this pertinent authority. Even worse, CBC itself has previously taken the position before the Patent and Trademark Office that due to extensive third-party use of "citizens" for financial services, "customers have become so conditioned by a plethora of [] similar marks that customers have been educated to distinguish . . . marks on the basis of minute distinctions." Smith Decl., Ex. 86 (quoting *McCarthy on Trademarks & Unfair Competition*, § 11.88 (3d ed. 1995)). In this case, however, CBC simply declares to the contrary and without a shred of evidence that "the parties' target market is no more 'sophisticated' than the general population." CBC Br. 17. Without any evidence to support CBC, however, this factor cannot be weighed in CBC's favor as support for a preliminary injunction or for any form of relief. *See Comerica*, 282 F. Supp. 2d at 572 (rejecting plaintiff's argument that bank customers "are not sophisticated"; "[w]hat is wrong with this argument is that there are simply no proofs to support it in the record"). Rather, this factor weighs in favor of a finding that there is no likelihood of confusion here because consumers are *presumed* to exercise a high degree of care in selecting banking services. *See id.* at 571; *see also Homeowners*, 931 F.2d at 1111 (where customers are "likely to carefully select the provider of . . . services," there is less likelihood of confusion).

### D. Defendant Did Not Adopt Its RBS CITIZENS Trademark With Bad Intent

According to CBC, CFG has adopted RBS CITIZENS with "bad faith." CBC Br. 17. This entire argument is based on a falsehood: that CFG's Chief Executive Officer, Stephen Steinour, sought and was denied "permission" from CBC to use RBS CITIZENS. Not only does CBC falsely depict a conversation that occurred last month over dinner between CBC's CEO William Hartman, Mr. Steinour, and Charter One executive Sandra Pierce. Steinour Decl. ¶¶ 9-11; Pierce Decl. ¶¶ 4-7. But, contrary to the impression that CBC is apparently trying to create with its recent spate of lawsuits in this District, CBC is not the arbiter of who is permitted to use

14

the term "citizens" in Michigan.  Before this lawsuit began, CFG consistently and repeatedly

pointed out in correspondence with CBC that marks using the term "citizens" are "exceptionally

weak," and CFG also expressed its belief that the use of its trademarks in Michigan would not

cause a likelihood of confusion with CBC's CITIZENS BANK mark.  Steinour Decl., Exs. 1-4,

6.  This correspondence shows that CFG did *not* adopt its distinguishable mark RBS CITIZENS

in bad faith.  *See, e.g.*, *AutoZone*, 373 F.3d at 800 (no evidence of bad-faith intent where

defendant chose its mark "because it believed that there was no infringement given the

dissimilarity of the marks").  The factor of defendants' intent is thus, at best for CBC, irrelevant.[9]

### E.        The Remaining Factors Do Not Show a Likelihood of Confusion

The remaining factors do not warrant extensive discussion and do not control the

likelihood of confusion analysis here.  *See Homeowners,* 931 F.2d at 1107 ("[N]ot all of these

factors will be particularly helpful in any given case . . . .").  Because there is no evidence of

actual confusion, this factor is, at best for CBC, irrelevant.  *See AutoZone*, 373 F.3d at 799

("Because Auto-Zone presented no evidence of actual confusion, this factor should not have any

bearing on the analysis.").  CBC contends, again without any proof, that "'actual confusion' is

imminent."  CBC Br. at 16.  But, for several years, both CBC and CFG have offered banking

services on the Internet under their respective CITIZENS BANK marks.  McLaughlin Decl. ¶ 6;

Gallagher Decl. 25.  CBC has also used CITIZENS BANK in Wisconsin and certain parts of

Michigan where other banks had been using "citizens" to identify retail banking services *before*

CBC entered the relevant markets.  Smith Decl. ¶¶ 25-27.  Notwithstanding all of this co-

---

[9]   *See Therma-Scan*, 295 F.3d at 639 ("This factor [defendant's intent], rather than titling the balance in either direction, does not carry significant weight if no evidence of intentional infringement exists."); *see also Little Caesar*, 834 F.2d at 571 (denying injunctive relief and noting that there was no evidence of defendant's "larcenous intent"); *AutoZone*, 373 F.3d at 800 ("This factor [intent] weighs against the likelihood of confusion."); *Data Concepts,* 150 F.3d at 627 (evidence "militat[ing] in favor of finding no intent . . . weighs against a finding of a likelihood of confusion").

extensive and overlapping use, there is apparently no evidence (or at least no concern by CBC) of any actual confusion and thus no reason to believe there will be any confusion between CITIZENS BANK and the distinguishable mark RBS CITIZENS. *Cf. Daddy's Junky Music*, 109 F.3d at 284 ("[T]he factor of actual confusion is weighted heavily only when . . . the particular circumstances indicate such evidence should have been available.").

The parties do offer related services—retail banking—and market these services through similar channels. But where, as here, the other factors in the analysis—including, most significantly, the strength of plaintiff's mark and the similarity of the marks—do not show a likelihood of confusion, the fact that the parties' services are related and offered through similar marketing channels will not alter the analysis.[10] The "likelihood of expansion" factor is also irrelevant here, because both parties will be providing banking services in Michigan. *See Comerica,* 282 F. Supp. 2d at 574 (where "both parties already occupy the same field," "[t]his factor is irrelevant"); *Little Caesar*, 834 F.2d at 572 ("There is no need for discussion of this factor here, because the plaintiff's expansion into the product area in which the defendants have been operating is a given.").

* * *

Balancing the likelihood of confusion factors here shows that a preliminary injunction is not warranted. CBC's CITIZENS BANK trademark is extremely weak due to the extensive third-party use of "citizens" for banking services. The parties' marks, in their commercial context, are clearly distinguishable. And, as this Court has held, consumers tend to exercise a

---

[10]   *See Daddy's Junky Music*, 109 F.3d at 282-83 ("Services and goods are related . . . if the services are marketed and consumed such that buyers are likely to believe that the services, *similarly marked*, come from the same source . . . .'") (emphasis added; internal quotation marks omitted); *Jet, Inc.*, 165 F.3d at 424 ("[Parties] are in direct competition, selling related goods through the same marketing channels. However, a reasonable jury could not conclude that the marks JET and AEROB-A-JET are confusingly similar . . . .").

high degree of care in choosing banking services and thus are not likely to be confused by source identifiers even if they have only "minor differences." *Comerica*, 282 F. Supp. 2d at 571. The remaining factors are either irrelevant or do not weigh in favor of a likelihood of confusion here. CBC thus cannot make *any* showing, let alone the requisite showing of a "*strong likelihood*," that it will succeed on the merits of its claims for trademark infringement and unfair competition under the Lanham Act or Michigan law. On this ground alone, the Court should deny CBC's motion and need not even reach the remaining factors in the preliminary injunction analysis.

## II.   THE REMAINING FACTORS SHOW THAT THE COURT SHOULD NOT ORDER A PRELIMINARY INJUNCTION

CBC does not engage in any substantive analysis of  the remaining factors to be considered on a motion for a preliminary injunction. Instead, CBC contends that, because it believes it has shown a likelihood of confusion, the remaining factors should be deemed to weigh in favor of an injunction. CBC Br. 18-20. As shown above, CBC is wrong about its likelihood of success on the merits of its claim. Moreover, on an independent analysis of the remaining factors—the harm to defendant, lack of irreparable harm to plaintiff, and the public interest— each weighs against granting CBC's motion.

First, CFG will be significantly and irreparably harmed by an injunction. CFG has been preparing to re-brand its CHARTER ONE branches for more than six months and is committed to spending more than $50 million on changed signage and other steps in the process, and scores of people within CFG's organization have exerted enormous effort to prepare to launch the RBS CITIZENS brand in Michigan and throughout the Midwest by the summer of 2007. McLaughlin Decl. ¶¶ 15-22. Interrupting this process by enjoining CFG from re-branding its branches in Michigan will cost CFG millions and irreparably disrupt its business operations in Michigan and elsewhere during the pendency of this lawsuit to resolve an infringement claim that, as set forth

above, is meritless.  *See Big Time Worldwide*, 236 F. Supp. 2d at 808 (denying injunction in trademark case on the ground, in part, that "Defendant has . . . invested substantial sums in signage, merchandise and other materials bearing Defendant's mark"); *see also Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1270 (6th Cir. 1985) (denying injunction where defendant would have to "halt construction . . . on its operations at substantial costs").

Second, CBC's contention that it will suffer irreparable harm in the absence of a preliminary injunction rings hollow.  CBC has peacefully co-existed for *decades* with other banks in the State of Michigan that use "citizens" to identify themselves.  Smith Decl. ¶¶ 23-24. CBC has also recently moved into markets in Wisconsin where at least nine other banks had been using a "citizens" name well before CBC entered (Smith Decl. ¶ 27).  *See Citizens Nat'l Bank*, 157 F. Supp. 2d at 721 (noting that plaintiff "citizens" bank had entered "home" market of defendant's "citizen" bank without any "debilitating" likely or actual consumer confusion). Further, CBC intends to re-brand its banks in Ohio as CITIZENS BANK notwithstanding that there are seventeen other banks in Ohio that are currently using the term "citizens" as source-identifiers.  Smith Decl. ¶¶ 25-26.  In light of this history and plaintiff's ongoing conduct, there is no reason why allowing CFG to use RBS CITIZENS during the pendency of this lawsuit should be deemed to inflict irreparable harm on CBC.  *See Trenton Corp. v. Superior Corrosion Control*, No. 06-15699, 2007 WL 268792, at *5 (E.D. Mich. Jan. 25, 2007) (plaintiff failed to show irreparable harm where it "has not shown that [defendant's] activities have caused it to lose any business").

Indeed, CBC has co-existed with Citizens State Bank in Macomb County for 12 years— apparently without an intolerable level of consumer confusion.  Smith Decl. ¶ 44.  And yet, in both this case and *Citizens First*, CBC is taking the indefensible position that it is entitled to

preclude its competitors outright from "using any and all marks formed by incorporating the word CITIZENS."  CBC Motion ¶ 1; Smith Decl., Ex. 81 at 2.  This Court should put a stop to CBC's wholly improper campaign to assert hegemony over the term "citizens."  Not only has CBC failed to show a likelihood of confusion, but CBC has come to this Court with unclean hands by (i) expanding (and continuing to expand) into areas where other banks have long since used "citizens" in their names; (ii) taking contrary positions before this Court and the P.T.O.; and (iii) disregarding this Court's April 27 order to maintain the status quo.  Gordon Decl.  On this basis alone, the Court should deny CBC's motion.  *See Precision Inst. Mfg. Co. v. Auto. Maintenance Mach. Co.*, 324 U.S. 806, 814 (1945) (unclean hands doctrine "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief").

## CONCLUSION

The Court should therefore deny plaintiff's motion for a preliminary injunction.

Dated:  May 1, 2007                                    Respectfully submitted,

                                                                / s / Fred K. Herrmann
                                                                William A. Sankbeil (P19882)
                                                                Fred K. Herrmann (P49519)
                                                                Christi A. Patrick (P69676)
                                                                KERR, RUSSELL AND WEBER, PLC
                                                                Detroit Center, Suite 2500
                                                                500 Woodward Avenue
                                                                Detroit, Michigan  48226-3406
                                                                (313) 961-0200
                                                                was@krwlaw.com
                                                                fkh@krwlaw.com
                                                                cap2@krwlaw.com

                                                                Of counsel:

                                                                Peter D. Vogl
                                                                Todd R. Geremia
                                                                JONES DAY
                                                                222 East 41st Street

New York, New York  10017
(212) 326-3939
pdvogl@jonesday.com
trgeremia@jonesday.com

Timothy P. Fraelich
JONES DAY
901 Lakeside Ave
Cleveland, Ohio  44114
(216) 586-3939
tfraelich@jonesday.com

R. David Hosp
Neil T. Smith
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts 02109
(617) 570-1941
RHosp@goodwinprocter.com
NSmith@goodwinprocter.com

*Attorneys for Defendants Citizens Financial Group, Inc., and Charter One Bank National Association, and Counterclaim Plaintiff The Royal Bank of Scotland, plc*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 1, 2007, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following counsel for Plaintiff, Citizens Banking Corporation:

Douglas P. LaLone, Esq. (dpl@raderfishman.com)

Glen E. Forbis, Esq. (gef@raderfishman.com)

/ s / Fred K. Herrmann
Fred K. Herrmann (P49519)
KERR, RUSSELL AND WEBER, PLC
Detroit Center, Suite 2500
500 Woodward Avenue
Detroit, Michigan  48226-3406
(313) 961-0200
fkh@krwlaw.com

Dated: May 1, 2007