# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

CITIZENS BANKING CORPORATION, )
a Michigan corporation, )
            )
            Plaintiff, )
            )
            )
vs. )
            )
CITIZENS FINANCIAL GROUP, INC., )
a Corporation, )
            )
            Defendant / Counterclaim Plaintiff )
            )
CHARTER ONE BANK, )
  NATIONAL ASSOCIATION, )
a National Association )
            )
            Defendant/Counterclaim Plaintiff )
            )
            and )
            )
THE ROYAL BANK OF )
SCOTLAND GROUP, plc, )
A Corporation )
            )
            Counterclaim Plaintiff )
            )
/

Civil Action No. 2:07-cv-11514

Judge Arthur J. Tarnow

Magistrate Mona K. Majzoub

# PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR A
## PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

ISSUES PRESENTED .................................................................................................... v

1.   INTRODUCTION .................................................................................................... 1

II.   BACKGROUND .................................................................................................... 2

III   ARGUMENT .................................................................................................... 7

    A.   RBS Failed To Establish A Likelihood Of Success On The Merits ...................... 7

        1.   RBS's Asserted Registration is Unenforceable By
           Virtue of RBS's Fraud ........................................................................ 9

        2   RBS Abandoned The Asserted Registration ................................................ 9

        3.   RBS Has No Superior Common Law Rights In Ohio ............................. 11

        4.   Citizens Has Priority In Ohio – Not RBS ................................................ 12

        5.   "Citizens" Is Diluted In Ohio Such
           That RBS Cannot Claim Exclusive Rights ............................................. 15

    B.   RBS Will Not Suffer Harm If The Injunction Is Denied ................................. 17

    C.   Granting The Injunction Will Cause Irreparable Harm To Citizens
        And Others .................................................................................................... 17

    D.   Granting The Injunction Serves No Public Public Interest ............................. 18

IV   CONCLUSION .................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Allard I, Enterprises, Inc. v. Advanced Programming Resources, Inc*,
   146 F.3d 350 (6th Cir. 1998) ................................................................. 13

*Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*
   249 F.3d 564 (6th Cir. 2001) (*Allard II*) ................................................. 13

*Blue Bell, Inc. v. Farah Manufacturing Co., Inc.*
   508 F.2d 1260 (5th Cir. 1975) .............................................................. 13

*Frisch's Restaurant, Inc. v. Shoney's, Inc.*,
   759 F.2d 1261 (6th Cir. 1985) ................................................................ 7

*In re Gastown, Inc.*
   326 F.2d 780, 140 U.S.P.Q. 216 (C.C.P.A. 1964) ................................. 12

*Gruner + Jahr USA Publishing, Div. of Gruner + Jahr Printing*
*and Publishing Co. v. Meredith Corp.*
   991 F.2d 1072 (2d Cir. 1993) .................................................................. 6

*Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*
   931 F.2d 1100 (6th Cir. 1991). ............................................................... 8

*Ignition Ath. Performance Group, LLC v. Hantz Soccer U.S.A., LLC*,
   2006 U.S. Dist. 68136 *3 (E.D. Mich. 2006) ................................. 7, 17

*Intrawest Financial Corp. v. Western Nat'l Bank of Denver*,
   610 F.Supp. 950 (D. Col. 1985)........................................................... 10

*Larry Harmon Pictures Corp. v. Williams Restaurant Corp.*
   929 F.2d 662, 18 U.S.P.Q.2d 1292 (Fed. Cir. 1991)............................. 12

*McDonald's Corp. v. Burger King Corp.*
   87 F. Supp. 2d 722 (E.D. Mich. 1999) .................................................... 7

*Ringling Bros. Barnum & Bailey Combined Shows, Inc. v. Utah Division of Travel Dev't*,
   170 F.3d 449 (4th Cir. 1999) ................................................................ 18

## STATUTES

15 U.S.C. § 1057(c) ...................................................................... 13

15 U.S.C. § 1072 ............................. ................................. ............................... ............... 13

15 U.S.C. § 1115(b)(5)............................. ................................. ............................... ............... 14

15 U.S.C. §1125(a) ............................. ................................. ............................... ............... 7

**ISSUES PRESENTED**

Should this Court deny Defendants' Motion for Preliminary Injunction where:

a)      Plaintiff Citizens has been using the mark CITIZENS for its banking services since 1871, and Citizens has been using such mark in Ohio for the last 40 year, and thus is the senior user;

b)      Defendants RBS are not using the mark CITIZENS in Ohio, but instead has asserted a federal registration that it no longer uses;

c) On April 20, 2007, Plaintiff filed a Petition with the United States Trademark Trial and Appeal Board to cancel Defendants' asserted trademark registrations;

d) Defendants have set forth no irreparable harm; and

e) It is not in the public interest to stop Citizens from using a mark that it has been using in Ohio since 1967?

**Plaintiff Citizens Banking Corporation Answers:**

YES.  This Court should deny Defendants' Motion.

I.    INTRODUCTION

This is a case of contested ownership of the "Citizens" name in <u>Michigan</u> between two financial institutions. Defendants/ Counterclaim Plaintiffs Citizens Financial Group, Inc., Charter One Bank, National Association and The Royal Bank of Scotland Group, plc (collectively "RBS") confuses the issues by now directing the Court's attention to Ohio, and by claiming that Plaintiff, Citizens Banking Corporation ("Citizens"), is attempting to somehow usurp rights that RBS does not possess. RBS is essentially attempting to assert rights in a trademark registration that it has abandoned and enforce rights in a mark that it does not own and has never owned. Thus, RBS is not entitled to a preliminary injunction on its claim of trademark infringement in Ohio.

Further, Citizens has filed a cancellation action with the Trademark Trial and Appeal Board ("TTAB") to cancel RBS's asserted registration for a number of bases, including because it was obtained fraudulently. *Exh. A*, **Tab 7.** Under the doctrine of primary jurisdiction,[1] this Court should stay RBS's counterclaim pending an expedited ruling by the TTAB. If the TTAB cancels RBS's registration, then this Court will have no further work to do.

Even if RBS held trademark rights, Citizens holds senior rights in Ohio vis-à-vis RBS. Citizens has used its CITIZENS BANK mark since 1967, in Ohio, and since 1871, in Michigan and the surrounding area. As such, Citizens has substantial use of its CITIZENS BANK mark in Ohio. Further, eighteen other banking entities already use "Citizens" as part of their name in Ohio in connection with operations at 144 separate locations. *Exh. A*, **Tab 6.** Even <u>if</u> RBS can establish that it owns some type of rights in Ohio, widespread use of similar marks by different

---

[1] Citizens hereby incorporates by reference its 4/28/07 Motion to Stay this proceeding pending the TTAB decision.

entities eliminates any potential for confusion in the marketplace.  For these reasons, RBS is not likely to succeed on the merits.  Thus, RBS's Motion should be denied.

## II.    BACKGROUND

Defendants' have requested an injunction to stop Citizens from using CITIZENS in Cleveland, Ohio at its 14 Republic Bank branches. RBS' motion should be denied because Citizens is a senior user of its mark (been there for 40 years), and RBS does not have exclusive rights in Ohio to "CITIZENS" (there are 17 other banks, some dating back to 1860), and RBS has affirmatively abandoned the asserted "C" logo Citizens Bank mark.  This motion should be denied.

Citizens, established in 1871, is a Midwest banking institution with its headquarters in Flint.  Citizens provides banking services in Michigan, Wisconsin, Ohio and Iowa. *Exh. B*, Hartman Decl. ¶ 8.  Citizens operates under the CITIZENS BANK mark in Michigan, Wisconsin and Ohio,[2] and as "F&M Bank" in Iowa.  Citizens owns trademark registrations in Michigan for the marks CITIZENS and CITIZENS BANK, and Citizens holds common law trademark rights in these same marks in Michigan, Wisconsin and Ohio by virtue of its long use and extensive advertising.  Citizens employs thousands of people and is a driving force in the Midwest banking community.  Citizens is a growing business, one of Michigan's few, and RBS seeks to jeopardize Citizens' continued expansion in Ohio, a place Citizens has been operating for 40 years.

RBS has coexisted with Citizens and also provides banking services.   RBS is headquartered in Scotland, has $164 billion in assets, and operates in thirteen states in the U.S. -- Connecticut, Delaware, Illinois, Indiana, Massachusetts, Michigan, New Hampshire, New Jersey, New York, Ohio, Pennsylvania, Vermont and Rhode Island.   RBS's activities in the New

---

[2] Honorable Judge Tarnow issued a temporary restraining order on April 26, 2007 precluding Citizens from changing its name on signage at fourteen branch locations from REPUBLIC BANK to CITIZENS BANK in Ohio. However, Citizens has conducted business in Ohio under its CITIZENS BANK mark for more than forty years.

England states are carried out under the name CITIZENS BANK.  However, RBS uses the brand CHARTER ONE for its operations in Indiana, Illinois, Michigan and Ohio. ***Exh. A***, *Tenniswood Decl.* at ¶5, Tab 1.  Thus, RBS has no brick and mortar in Ohio using the name "Citizens."

Instead, RBS relies upon a federal trademark Registration No. 2,482,203 ('203) for its logo "C CITIZENS BANK," which was filed on July 27, 2000.  In order to obtain the '203 registration, Defendant's Sr. Vice President Joel Brickman, signed the following Declaration (***Exh. A,* Tab** 7.):

DECLARATION

The undersigned Joel J. Brickman hereby declares that he is Senior Vice President and General Counsel of the Applicant corporation and is properly authorized to execute this application on behalf of Applicant; that he believes the Applicant to be the owner of the Mark shown in the attached Drawing; that to the best of his knowledge and belief no other person, firm, corporation or association has the right to use the Mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when applied to the goods or services of such other person, to cause confusion, or to cause mistake or to deceive; and that all statements made of his own knowledge are true and all statements made on information and belief are believed to be true after reasonably diligent inquiry; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. §1001, and that such willful false statements may jeopardize the validity of this application or any resulting registration.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY AT BOSTON, MASSACHUSETTS, THIS 24th DAY OF July, 2000.

CITIZENS FINANCIAL GROUP, INC.

By: _____
Joel J. Brickman
Sr. Vice President & General Counsel

3

Accordingly, in July, 2000, RBS declared that it was unaware of any third party that had a right to use this CITIZENS mark in a manner that would cause confusion. However, Defendants now claim that Citizens' use of the CITIZENS BANK mark in Ohio, is or will cause confusion with RBS's "C" CITIZENS BANK logo. RBS signed a another Declaration on July, 2005, again declaring there is no confusion between its logo and any other third party. As set forth in *Exh. A,* **Tab** 7, Defendants stated:

New Use-Based Trademark Application
Mark: CITIZENS BANK NOT YOUR TYPICAL BANK [& design]
Applicants: Royal Bank of Scotland Group PLC
and Citizens Financial Group, Inc.
Page 5

DECLARATION

The undersigned hereby declare that each is an authorized officer of each of the joint applicant entities identified herein, and each is duly authorized to execute this Declaration on behalf of the Applicants; that each believes the joint applicants to be the owners of the Mark shown in the accompanying Drawing; that to the best of his knowledge and belief no other person, firm, corporation or association has the right to use the Mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when applied to the goods or services of such other person, to cause confusion, or to cause mistake or to deceive; and that all statements made of his own knowledge are true and all statements made on information and belief are believed to be true after reasonably diligent inquiry; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. § 1001, and that such willful false statements may jeopardize the validity of this application or any registration resulting therefrom.

DATED THIS 8 DAY OF JULY , 2005:

CITIZENS FINANCIAL GROUP, INC.,

By:
Joel T. Brickman
V. Vice President and General Counsel

ROYAL BANK OF SCOTLAND
GROUP PLC,

By:
Richard Curtin
Head of Intellectual Property Unit
Group Secretariat

However, on April 16, 2007, RBS's Group Executive Vice President and Chief

Marketing Officer, Theresa McLaughlin, signed a Declaration in this case declaring:

13.    In 2004, CFG also acquired the retail banking operations of Charter One Financial, Inc. After that acquisition, CFG re-branded from CHARTER ONE to CITIZENS BANK a total of approximately 140 branches throughout the Northeast. CFG did not re-brand its Michigan CHARTER ONE banks as CITIZENS BANK. In part, this decision was due to the position asserted in 2004 by Citizens Banking Corporation with respect to the name CITIZENS BANK that it uses within the State of Michigan. CFG also did not re-brand CHARTER ONE banks in Ohio, Indiana, or Illinois. That was because the marketing for CFG's retail banking branches in Indiana, Illinois, Ohio, and Michigan is done collectively as a single unit. It was therefore not consistent with our business plan to re-brand CHARTER ONE branches in Indiana, Illinois, and Ohio without re-branding the Michigan branches as well.

14.    I declare under penalty of perjury that the foregoing is true and correct.

Executed within the United States on April 16, 2007.

// s // Theresa McLaughlin
THERESA McLAUGHLIN

Thus, Defendants clearly knew about Citizens when the declaration attesting to "no confusion" with any third parties was signed, but Defendants now argue that there is a likelihood of confusion between Citizens' CITIZENS BANK mark, and Defendants' "C CITIZENS BANK" logo, which is invalid anyway. This inconsistent position demonstrates that either (1) RBS's Declarations were false, or (2) RBS's argument that there is a likelihood of confusion in Ohio is false. Is must be one or the other – both statements cannot be true.

The '203 "C" CITIZENS BANK logo, pictured below, is limited in scope.

CITIZENS BANK

This federal trademark registration protects only this exact stylized logo. *Gruner + Jahr USA Publishing, Div. of Gruner + Jahr Printing and Publishing Co. v. Meredith Corp.*, 991 F.2d 1072 (2$^d$ Cir. 1993). The registration does not protect the words CITIZENS BANK without the logo. Citizens does not use RBS's logo. Moreover, RBS does not own any trademark registration for the words CITIZENS BANK with a logo. Instead, RBS's registrations cover logo marks, and their rights are limited to what is shown in the logo. This is because Defendants know they do not own exclusive rights to the mark CITIZENS BANK on a nationwide basis. Rather, Defendants' registrations incorporating the "C" logo is very limited in scope.

This is to be contrasted with Citizens' Michigan case, wherein Citizens owns two state trademark registrations for the block letter words "CITIZENS" and "CITIZENS BANK". These state registrations afford Citizens exclusive rights throughout the state of Michigan, and covering any stylization that Citizens wishes to use. Further, Citizens' common law rights throughout Michigan correspond to the words CITIZENS and CITIZENS BANK. Thus, Citizens' rights in Michigan are for the block letter words "CITIZENS" and "CITIZENS BANK". By contrast, Defendant RBS' rights, if any, in Ohio pertain solely to a federal trademark registration for the "C" logo design, which Plaintiffs do not employ. The strength of Citizens' mark here in Michigan is underscored by RBS' actions.

In March 2007, RBS's CEO came to Michigan to meet with Citizens' CEO, William Hartman. *Exh. B, Hartman Decl.* ¶4. At that meeting, RBS sought Citizens' permission to transition from CHARTER ONE to RBS CITIZENS in Michigan, Citizens' primary trading area. To protect its identity and valuable trademark rights, Citizens refused to grant permission to RBS. *Hartman Decl.* ¶6. Soon after, RBS threatened that it would move forward anyway in to Michigan. *Hartman Decl.* ¶7. Citizens then filed this action for trademark infringement and

related claims, and subsequently filed a motion to enjoin RBS's use of RBS CITIZENS in Michigan. As a counter-attack, RBS filed its own motion to enjoin Citizens' use of CITIZENS BANK in Ohio, based solely on the "C" CITIZENS BANK '203 registration. However, RBS' asserted registration is invalid and unenforceable, and moreover, Citizens was using its CITIZENS BANK mark in Ohio for thirty-three years before the '203 application was filed. As the senior user, Citizens must prevail in this Motion.

## III.   ARGUMENT

RBS is not entitled to injunctive relief. When considering a request for injunctive relief, this Court must take the following four factors into account:

(1)   the plaintiff's likelihood of success on the merits;

(2)   whether the plaintiff will suffer irreparable harm without the injunction;

(3)   whether granting the injunction will cause substantial harm to others; and

(4)   the impact of the injunction on the public interest.

*Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1263 (6th Cir. 1985); *Ignition Ath. Performance Group, LLC v. Hantz Soccer U.S.A., LLC*, 2006 U.S. Dist. 68136 *3 (E.D. Mich. 2006). Further, an injunction is an "extraordinary remedy" and therefore cannot be granted unless RBS has proved irreparable harm. *McDonald's Corp. v. Burger King Corp.*, 87 F. Supp. 2d 722 (E.D. Mich. 1999). In this case, RBS fails on all counts.

### A.   RBS Failed To Establish A Likelihood of Success On The Merits

Section 43(a) of the Lanham Act prohibits the use of any word, term, name, symbol or device that is likely to cause confusion or deception among consumers as to the affiliation, connection or association with a senior user of a trademark. 15 U.S.C. §1125(a). To make a claim of infringement under the Lanham Act, RBS must prove that:

(1) it owns a valid mark of which it is the senior user, and

(2) there is a likelihood of confusion among consumers as a result of the parties' respective marks. *See Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1105 (6th Cir. 1991). RBS failed to set forth evidence on the first prong of this test, but instead jumped right to the likelihood of confusion analysis. Before evaluating this second factor, however, RBS must first prove that it is the rightful owner of a valid trademark in the CITIZENS BANK mark with respect to the state of Ohio. This it cannot do. RBS's asserted '203 registration for the "C" CITIZENS BANK logo was filed on July 27, 2000 and covers the logo below.

CITIZENS BANK

RBS's asserted '203 registration, as well as its other federal trademark registrations, were fraudulently obtained and should be canceled on the basis of fraud and abandonment. RBS cannot rely on senior common law rights because 1) it only alleged infringement of the federal '203 registration as the basis of its injunction, and 2) Citizens is the senior user in Ohio by predating the '203 application by thirty-three years.

Moreover, even if RBS had enforceable rights in the '203 registration, RBS cannot establish that Citizens' continued use of the CITIZENS BANK mark in Ohio will create a likelihood of consumer confusion with RBS' own admissions in its '203 Declaration which claims no confusion with any other corporation. Plaintiff Citizens has priority (back to 1967) which cannot be overcome even by RBS' later filed 2000 federal registration. Further, there is sufficient dilution in Ohio (17 other parties using "Citizens") such that consumers will not associate the "Citizens" with RBS or any other single entity. *Exh. A*, Tab 6. Thus, RBS' motion

must fail as they did not establish a likelihood of success on the merits.

### 1.   RBS's Asserted Registration is Unenforceable By Virtue of RBS' Fraud

For its Motion, RBS relies entirely on a federal registration for the mark CITIZENS

BANK & design. However, a federal trademark registration protects only the exact mark shown

in the registration – in this case, **◆ CITIZENS BANK** (hereinafter, "C" Logo").

RBS's asserted Registration No. 2,482,203 is invalid, unenforceable, and was fraudulently

obtained. Specifically, RBS signed a declaration under oath stating that no other party would be

harmed by issuance of the registration, and that there would be no likelihood of confusion

resulting from the registration. *Tenniswood Decl.* Tab 7.  In RBS' Motion which relies on '203

registration as the sole basis for a preliminary injunction, RBS takes the contrary position that

Citizens' "CITIZENS BANK

**◆ CITIZENS BANK**

mark is likely to cause consumer confusion with   mark."   Both

statements cannot be true – either the '203 registration is invalid <u>or</u> there is no likelihood of

confusion.  Either way, RBS's Motion fails.

### 2.   RBS Abandoned The Asserted Registration

As noted above, RBS through its various filings has created a dichotomy that must be

resolved against RBS.  Even assuming for purposes of argument that RBS's asserted registration

is not void ab initio as a result of RBS's fraud on the Trademark Office, RBS's Motion still fails

because RBS abandoned the relevant mark and the registration is therefore unenforceable.  A

federal trademark registration is only valid so long as it is not abandoned.  Once the Registration

is abandoned, that exact mark cannot be enforced against third parties.

Beginning in 2004, RBS replaced RBS's Old Logo with a "snowflake" design, resulting

in the mark shown below ("RBS's New Logo"):

## ✶✶ Citizens Bank

However, RBS is not asserting RBS's New Logo as part of its claim of infringement.[3] Due to this change, RBS's asserted registration for RBS's Old Logo has been abandoned and must be canceled. Citizens has filed a petition to cancel the '203 registration for RBS's "C" Logo and variations of the same mark, which have likewise been abandoned. A copy of the Petition for Cancellation is attached as *Ex. A.*, Tab 7.

In *Intrawest Financial Corp. v. Western Nat'l Bank of Denver*, 610 F.Supp. 950, 958 (D. Col. 1985), the Court determined that intent to abandon a bank name that had been discontinued could be inferred from the circumstances, which included advertising the bank's new name in conjunction with its former name and the absence of any documentation indicating the bank's intent to resume use. In *Intrawest*, the bank resurrected use of its former name for its safe deposit box department when it realized that a competitor had begun using a name similar to its former name. *Id.* In light of the bank's name change, the court determined that its attempt to resurrect the mark was a "sham use devised in an attempt to prevent others from using the mark, not the bona fide use required to establish or retain rights in the mark." *Id.*

Like the plaintiff in *Intrawest*, RBS in 2004 made public announcements of its intent to abandon RBS's Old Logo. *Exh. A*, Tab 8. RBS's intent to abandon RBS's Old Logo (and all registrations incorporating such logo) is confirmed by RBS's advertising, including its own press releases and publications and related media coverage, including the following:

- November 23, 2004, press release titled "CFG announces new graphic identity following Charter One acquisition" and stating that "[t]he new logo will be phased into Charter One's Midwest market (Ohio, Illinois, Indiana, Michigan) signage

---

[3] RBS' new logo has no federal registration.

beginning in 2004. Citizens' New England and Mid-Atlantic market signage will begin changing in March 2005 and continue throughout the year. Corporate-wide use of the new logo in written materials will begin in early 2005."

- RBS's conversion of its advertising and signage to reflect the new logo.

- RBS's filing some eleven new trademark applications for marks incorporating the new logo beginning in mid-2005.

- Wikipedia electronic encyclopedia entry stating that "[a] new corporate logo, designed to show Citizens Bank's connection to the Royal Bank of Scotland Group, debuted in 2005."

- Article titled "New Logo for Citizens Bank = Headache for Phils" from www.the700level.com indicating that all versions of RBS's Old Logo at Citizens Bank Park would be replaced with the new logo and stating that "[t]he green Pac-Man-like design made from three diamonds is now a part of baseball history."

- December 29, 2005, article from The Boston Globe stating that "... Citizens has replaced the "C" logo on its branches with The Royal's "snowflake" logo (though it kept the Citizens name)."

- RBS's decision, announced in 2004, to change its corporate logo as part of an initiative to bring The Royal Bank of Scotland and Citizens Bank "closer together." See *Tenniswood Decl.*, Tab 8.

From the above examples, it is evident that RBS intentionally discontinued use of RBS's C Logo and focused its efforts instead on RBS's New Logo beginning in November 2004. Thus, because RBS has abandoned the C Logo, their is no likelihood of success on the merits.

**3.    RBS Has No Superior Common Law Rights In Ohio**

RBS bases its Motion entirely on a single federal registration that is invalid or unenforceable for the reasons discussed above. Thus, RBS claims no superior common law rights as the basis of its motion. However, RBS now indicates that its branch locations outside of Ohio have made loans "in Ohio" for the period of 2001 – 2006. However, RBS has failed to set forth proper record evidence to establish this as bona fide use in Ohio of the mark CITIZENS BANK. Likewise, RBS has provided insufficient evidence to establish the geographical scope of

its alleged use of CITIZENS in Ohio. Indeed, RBS admits in its own prospectus that it has not used CITIZENS BANK in Ohio as of September 2006. *See Prospectus,* **Ex. A, Tab4**, at pp. 86-87. Further, to the best of Citizens' knowledge and belief, RBS is not currently and has not done any business in Ohio in connection with the mark CITIZENS BANK. *See Decl. Gallagher,* ***Exh. C,*** at ¶18. Further, Citizens conducted its own investigation to ascertain the nature and extent of use of CITIZENS BANK by RBS in Ohio. These efforts failed to uncover any use in Ohio. *See Decl. Tenniswood* at ¶¶4-5. Thus, RBS has failed to establish that it owns any common law rights in Ohio that are superior to Citizens' rights. This is yet a third reason why there is no likelihood of success on the merits.

### 4. Citizens Has Priority In Ohio – Not RBS

As early as 1964, the courts have recognized that services provided solely within a single state, to customers that travel across state lines, constitutes interstate commerce. See, *In re Gastown, Inc.,* 326 F.2d 780, 140 U.S.P.Q. 216 (C.C.P.A. 1964). Moreover, even services to out of state customers provided from a small, single location restaurant constitutes use in commerce. See, *Larry Harmon Pictures Corp. v. Williams Restaurant Corp.,* 929 F.2d 662, 18 U.S.P.Q.2d 1292 (Fed. Cir. 1991). Accordingly, the physical location of the place from which the services are rendered, may be of no import.

Here, RBS cannot use its invalid federal registration to trump Citizens in Ohio, and RBS has failed to establish any superior common law rights on which to rely. In stark contrast, Citizens has used its CITIZENS BANK mark in Ohio since at least as early as 1967. *See Decl. Collins,* **Ex. D** at ¶¶4-5. Tab 1. Citizens' CITIZENS BANK mark has a strong presence in Ohio. *Collins Decl.* at ¶7. Citizens has over 675 customers in Ohio for the period of 1967 to July 26, 2000. *Collins Decl.* at ¶5. Attached as *Exh. D*, Tab 3 is a screen shot of a few business

customers in Ohio. They date back to 1978. Currently, Citizens has at least 3,340 customers in Ohio. *Exh. D*, Tab 1.

A genuine use of the mark may be established even if the first uses are not extensive and do not result in deep market penetration or widespread recognition. *Allard I, Enterprises, Inc. v. Advanced Programming Resources, Inc*, 146 F.3d 350, 358-359 (6th Cir. 1998) ; *Blue Bell, Inc. v. Farah Manufacturing Co., Inc.*, 508 F.2d 1260, (5th Cir. 1975). "Ownership of a trademark accures when goods bearing the mark are placed on the market" *Id*. at 1265. In *Allard I*, the defendant used a service mark before the plaintiff's registration on at least one resume, at least one fax, and in numerous other solicitations as they offered their services to businesses in Ohio. *Allard I*, 146 F.3d at 359. The service mark was used to attempt to complete genuine commercial transactions. *Id* . Additionally, the mark was sufficiently public to qualify for protection. *Id*. Although limited, the defendant's use of its mark was part of an ongoing program to exploit the mark commercially. *Id*. Defendant established prior rights.

After remand to the district court in Ohio and subsequent appeal, the Sixth Circuit evaluated how much geographic territory the prior user of the mark was entitled to. *Allard Enterprises, Inc. v. Advanced Programming Resources, Inc.*, 249 F.3d 564, 574 (6th Cir. 2001) (*Allard II*). The Sixth Circuit remanded, instructing the district court to consider evidence of actual use and the natural zone of geographic expansion at the time of the plaintiff's registration, based upon volume of sales in the area, growth trends, market penetration, and the amount of advertising.

In *Allard I*, the Sixth Circuit held:

"Under 15 U.S.C. § 1072, plaintiff's federal registration provides constructive notice of its ownership of the mark. As we noted above, under 15 U.S.C. § 1057(c), the owner of a federally registered mark may claim constructive use of that mark as of the date of filing of the application for registration. Under this

statutory scheme, defendants' rights to its mark extend only as far as the area where its continuous prior use of that mark preempted plaintiff's constructive use of its mark. See 15 U.S.C. § 1115(b)(5).

Here, Citizens' prior use preempts RBS' constructive date of use of July 2000. For example, for the period 1967 to July 2000, Citizens has had over 686 customers that resided in Ohio. *Id.* Citizens has customers in over 600 cities across Ohio and in every major geographical market in Ohio. *Collins Decl.* at ¶6. Attached is a map showing the locations of Citizens customers in Ohio. *Exh. A,* Tab 6, *Exh. D,* Tab 2. Citizens has routinely sent statements (bearing its mark CITIZENS) to its customers in Ohio since 1967. Collins Decl. ¶ 11, Tab 4. Citizens uses its CITIZENS BANK mark in Ohio in mailings and other advertising materials, Welcome brochures, on displays, on stationery, loan payment stubs, contracts and otherwise in connection with the provision of banking services in Ohio. *Collins Decl.* at ¶¶16-17, Tabs 5, 7, and 10.

Further, since at least as early as 1978, Citizens has had commercial accounts with Ohio companies. *Collins Decl.* at ¶8. Citizens also provides loan services through a network of dealers in Ohio. *Collins Decl.* at ¶15. At present, Citizens has formal relationships with dealers in the cities of Akron, Brandner, Huron, Kent, Lorain, Marblehead, Monroeville, Milan, North Canton, Pioneer, Port Clinton, Sandusky, Springfield, Streetsboro, Swanton, Sylvania and Wauseon. *Collins Decl.* at ¶15 and Tab 8 for a listing of these dealers.

Moreover, Citizens has customers located throughout the State of Ohio. See the map illustrating the location of Citizens' Bank customers for the period of 1967 through 2000. See *Decl. Tenniswood,* pp. 6, 7. Tab 7 is a map illustrating Citizens' customers in Ohio for the period of 1967 through 2000.[4] Thus, Citizens is afforded rights at least throughout Ohio where it has previously done business. This includes the numerous boat and RV dealerships in which Citizens has contracts with throughout the State of Ohio. See *Decl. Tenniswood,* Tab 6.

---

[4] This is the time period before Defendant RBS filed its Federal Trademark Application.

14

Attached as *Exh. D*, Tab 9 are actual contracts Ohio customers signed with Citizens for RV and boat loans – before July 2000, the date of RBS trademark application.

In 1999, Citizens began an indirect loaning program for RV and boat dealers in Ohio. On May 12, 1999, Citizens received a Certificate from the State Of Ohio for indirect lending to customers in Ohio. *Decl.* Collins, ¶ 13, Tab 6. Tom Miles, of Citizens, personally traveled throughout Ohio as a sales representative of Citizens, soliciting boat, RV dealers and other dealers. See **Ex.F**, *Decl. Miles*, ¶ 4. Mr. Miles "personally provided interest rate sheets to prospective dealers in Ohio." *Id* at ¶ 5, see also a copy of the July 1, 1999 Citizens' Rate Sheets distributed throughout Ohio. *Exh. F*, Tab 1.

Also in 1999, Dale Flowney was the marine lender of Citizens indirect loan business. *Exh. E*, Decl. Flowner, ¶ 2. Mr. Flowney traveled Ohio and met with boat dealers and specifically on July 7, 1999, he sent a fax to Sima Marine located in Maple Heights, Ohio. He provided the Citizens rate sheet, which prominently displays the CITIZENS brand. *Id.* at ¶ 3, Tab 1. As part of his background checks of dealers in Ohio, he ran D&B reports. See *Exh. E*, Tab 2 for the D&B he had run for Sima Marine in July 1999. All of this use in Ohio further establishes Citizens' senior rights in Ohio. Since 1999, Citizens signed up 25 boat and RV dealerships in Ohio to provide indirect loans to customers in Ohio. *Exh. D*, ¶ 25.

### 5. "Citizens" Is Diluted In Ohio Such Tha RBS Cannot Claim Exclusive Rights

RBS has completely failed to establish that it owns a valid mark of which it is the senior user. Citizens does appreciate that a number of entities use the mark "CITIZENS" for banking services in Ohio. In fact, the term "CITIZENS" is so widely used in Ohio by Citizens in addition to numerous third parties. Specifically, some eighteen third party entities operate at least 144 separate locations throughout the state of the Ohio as shown on the map below:



**<u>Legend</u>**

| | Bank | Locations |
|---|---|---|
| | The Citizens Bank of Higginsport | 3 |
| | Lebanon Citizens National Bank | 21 |
| | The Citizens Bank of Logan | 15 |
| | The First Citizens National Bank | 12 |
| | Citizens Financial Services | 15 |
| | Citizens Bank of Ashville | 3 |
| | The Citizens National Bank of Southwestern Ohio | 2 |
| | The Citizens Bank Company | 2 |
| | The Citizens Banking Co | 29 |
| | Citizens National Bank | 8 |
| | Citizens National Bank (McConnelsville) | 2 |
| | Citizens National Bank of Urbana | 7 |
| | Citizens National Bank (Woodsfield) | 2 |
| | Citizens Bank of De Graff | 1 |
| | Farmers Citizens Bank | 5 |
| | The Citizens Savings Bank | 11 |
| | Citizens National Bank (Chillicothe) | 4 |
| | Citizens Federal Savings & Loan Association | 2 |

Marketplace realities dictate the strength of a mark in a given territory and in fact, the

mark CITIZENS is used for banking services in Ohio with such frequency that no single entity –
including RBS – can lay exclusive claim to rights therein. As evidenced by the map and
supporting Declaration of Dolores Tenniswood, the current situation in Ohio is <u>completely</u>
<u>different</u> than the current situation in Michigan, rendering RBS' comparisons are flawed. RBS is
not operating anywhere in Ohio as CITIZENS BANK. Yet, RBS filed this Motion purporting to
keep Citizens out of Ohio, even though Citizens has been doing business in Ohio for at least
forty years! Citizens' conversion of its fourteen branch locations in the Cleveland area will not
cause confusion vis-à-vis RBS or any third party.

### B.    RBS Will Not Suffer Harm If The Injunction Is Denied

The primary purpose of a preliminary injunction is to maintain the status quo. *Ignition*
*Ath.* at *3. In this regard, Citizens has been using its CITIZENS BANK mark in Ohio for forty
years. *Collins Decl.* at ¶¶4-5, 11, 17; *Gallagher Decl.* at ¶2. At the time this suit was filed,
Citizens was using and had valid rights in the CITIZENS BANK mark throughout the state of
Ohio, whereas RBS did not have, and does not now have, any such rights. To maintain the status
quo, therefore, Citizens should be allowed to continue its use of CITIZENS BANK during the
pendency of this suit and RBS should be prohibited from attempting to reserve rights in a mark it
does not own.

Moreover, the federal trademark laws are not designed to promote unfair competition.
As disgruntled as RBS may be with Citizens' decision to re-brand its REPUBLIC BANK
locations in Ohio to CITIZENS BANK, RBS may not prevent Citizens from using a name in
which Citizens has priority and where significant third party uses of the term exist.

### C.    Granting The Injunction Will Cause Irreparable Harm To Others

A denial of RBS's Motion, on the other hand, would not cause RBS to suffer harm and

would serve to preserve the status quo. RBS has no banks in Ohio using the name CITIZENS. Thus, there is no geographical overlap.

Citizens' transition of its REPUBLIC BANK branches to CITIZENS BANK branches is virtually complete. *Gallagher Decl.* at ¶3. Requiring Citizens to backpedal at this stage would mean that Citizens would lose the substantial investment it has made in promoting and building its CITIZENS BANK business in Ohio. Citizens would be forced to expend additional monies to undo its transition over the past seven months. The $200,000 plus marketing program for the Ohio Republic Bank transition to Citizens Banks has been put on hold. This at considerable cost to Citizens. Moreover, it would be nearly impossible for Citizens to operate its former Republic branches in Ohio on one platform, and then the other Republic branches in Michigan on another platform. A denial of RBS's Motion, on the other hand, would not cause RBS to suffer harm. RBS has not presented any reliable evidence that it has suffered harm, nor even owns any valid rights, in the CITIZENS BANK mark in Ohio.

**D.   Granting The Injunction Serves No Public Interest**

The consuming public has a strong interest in unrestrained trade and free competition. *See Ringling Bros. Barnum & Bailey Combined Shows, Inc. v. Utah Division of Travel Dev't,* 170 F.3d 449, 455 (4th Cir. 1999) (noting concern that dilution cause of action may "unduly expand the ability of trademark owners to monopolize language and inhibit free competition"). There is no public interest in stopping Citizens from doing in Ohio what it has been doing for 40 years. That is providing banking and loan services to Ohio residents.

Furthermore, there is no public interest in stifling the natural progression of Michigan's oldest bank based out of Flint, which is the second  biggest bank headquartered in Michigan. Citizens has been doing business in Michigan for 137 years, and in Ohio for 40 years.

By contrast, RBS has never done business in Ohio or Michigan as CITIZENS BANK.

RBS can claim no valid interest in the mark CITIZENS BANK in Ohio. Accordingly, granting RBS's Motion serves no benefit whatsoever. To do so would afford RBS protection in a territory that defies trademark law.

## IV.   CONCLUSION

For all of the foregoing reasons, Citizens respectfully requests that this Court deny Defendants' / Counterclaim Plaintiffs' Motion for a Preliminary Injunction and permit Citizens to move forward with its transition of various branch locations in Ohio.

Respectfully submitted,

**RADER, FISHMAN & GRAUER PLLC**

Date: May 1, 2007                     By:   /s Glenn E. Forbis
                                      R. Terrance Rader (P28747)
                                      Glenn E. Forbis (P52119)
                                      Tracy L. Zawaski (P59130)
                                      Douglas P. LaLone (P45751)
                                      RADER, FISHMAN & GRAUER PLLC
                                      39533 Woodward Ave., Suite 140
                                      Bloomfield Hills, Michigan  48304
                                      Tel: (248) 594-0600
                                      Fax:  (248) 594-0610
                                      E-mail:  gef@raderfishman.com
                                      *Attorneys for Plaintiff*

19

## CERTIFICATE OF SERVICE

I hereby certify that on May 1, 2007, a copy of PLAINTIFF'S OPPOSITION TO

DEFENDANTS' / COUNTERCLAIM PLAINTIFFS'MOTION FOR A PRELIMINARY

INJUNCTION I electronically filed the foregoing paper with the Clerk of the Court using the

ECF system which will send notification of such filing to the following: Fred K. Herrmann,

Christi A. Patrick, and William A. Sankbeil.  There are no non-ECF participants.


/Dolores J. Tenniswood/
**RADER, FISHMAN & GRAUER PLLC**
35933 Woodward Avenue, Suite 140
Bloomfield Hills, Michigan 48304
Telephone: (248) 594-0600
Facsimile:  (248) 594-0610
djt@raderfishman.com